# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

TYRONE HARRELL                               CIVIL ACTION

VERSUS                                      No. 11-1886

ORKIN, LLC                                    SECTION "I"

## <u>ORDER AND REASONS</u>

Before the Court is a motion[1] for summary judgment filed by defendant, Orkin, LLC ("Orkin"). Plaintiff, Tyrone Harrell ("Harrell"), opposes[2] the motion. For the following reasons, Orkin's motion for summary judgment is **GRANTED**.

### *BACKGROUND*

Harrell is former Orkin employee who began his employment with the company in 1995.[3] Orkin is a foreign limited liability company, providing pest and termite control services, licensed to do business in, and actually doing business in, Louisiana.[4] Harrell, an African-American male, separated from his employment with Orkin on September 30, 2010.[5]

On July 13, 2011, Harrell initiated the above-captioned matter (*Tyrone Harrell v. Orkin, LLC*, Case No. 73,793-C) in the 29th Judicial District Court for the Parish of St. Charles, State of Louisiana, alleging that he had been subjected to employment discrimination based on race in

---

[1] R. Doc. Nos. 62 and 72.

[2] R. Doc. Nos. 66 and 74.

[3] R. Doc. Nos. 62-1, p. 1 and 66-1, p. 1.

[4] R. Doc. No. 1-2, p. 1.

[5] R. Doc. Nos. 62-1, p. 16 and 66-1, p. 23.

violation of Louisiana's Employment Discrimination Law.[6]  Orkin timely removed the matter to the U.S. District Court for the Eastern District of Louisiana and averred that this Court has federal diversity jurisdiction pursuant to 28 U.S.C. § 1332.[7]

Orkin thereafter filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Harrell failed to properly plead claims for hostile work environment and constructive discharge and that even if such claims were properly pled, they had prescribed.[8]  This Court denied the motion, finding that wholesale dismissal of the above-captioned matter may be more appropriate in summary judgment after an opportunity for discovery.[9]  The parties have engaged in extensive discovery since that time and they have fully developed the factual record that is now before the Court.

Over a roughly two-year period beginning in March 2008, Harrell maintains that he was subjected to an "organized scheme [based on race] . . . to discriminatorily prevent [him] from further moving up (and succeeding) at his job at Orkin."[10]  Harrell identifies several events that evidence the alleged repeated, continual harassment that he experienced while employed with Orkin:

1) **Demotion** – In March 2008, while serving as the assistant branch manager at Orkin's St. Rose termite branch, Harrell was transferred to the vacant service manager position in the

---

[6] R. Doc. No. 1-2.

[7] Harrell is a citizen of Louisiana.  Orkin is a limited liability company organized in the State of Delaware and its principal place of business is in the State of Georgia.  R. Doc. No. 1-1, p. 2.

[8] R. Doc. No. 4.

[9] R. Doc. No. 11.

[10] R. Doc. No. 66, p. 5.

residential pest control branch.  He alleges that this "unilateral transfer" was a demotion.[11]

2) **Erroneous write-up** – In August 2009, one of Harrell's service technicians incorrectly completed a customer service agreement with the wrong price.  Harrell was verbally counseled on how he handled the matter and a form documenting this counseling was placed in his personnel file.  Harrell argues that this form was a "means to later improperly and discriminatorily deny [him] the position of Branch Manager of Pest Control.[12]

3) **Failure to promote** – Will Dear ("Dear"), who is Caucasian, was selected for the vacant residential pest control branch manager position in August 2009 instead of Harrell.[13]

4) **Erroneous write-up** – Dear verbally counseled Harrell in December 2009 about the high number of "cancellations" and "allowances"[14] that were occurring at Harrell's branch.

---

[11] R. Doc. Nos. 62-1, p. 3, 66-1, p. 3 and 1-2, p. 2.

[12] R. Doc. Nos. 62-1, p. 6 and 66-1, p. 9.

[13] R. Doc. Nos. 62-1, p. 7 and 66-1, pp. 10-11.

[14] With respect to the definition of an "allowance," Harrell testified (R.Doc. No. 66-2, pp. 104-05) as follows:

> Q: Remind me, what specifically does it mean, allowances?
> A: If your service is due this particular month, and you don't want service for whatever reason it may be and that service don't get done in that particular month, it is considered an allowance.
> Q: So it could be the customer saying --
> A: Yes.
> Q: -- things are too busy, nobody can be here?
> A: Right, can't afford it right now, whatever it might be.  That's considered an allowance.
> Q: And if service doesn't happen, Orkin doesn't get paid?
> A: Correct.
> Q: Or it could be a situation of the tech just never got to that customer in that month, right?
> A: That would be correct.

Dear placed a verbal counseling form documenting the conversation in Harrell's personnel file. Harrell contends that Dear "only wrote [him] up because [Orkin's region manager] David Davis instructed [Dear] to [do so] and to start a 'paper trail' on Harrell."[15]

5) **Failure to promote** – In December 2009, Wayne Zimmerman ("Zimmerman"), who is also Caucasian, was selected to assume the branch manager position for both the termite and pest control divisions of the St. Rose branch rather than Harrell.[16]

6) **Denial of 2009 year-end bonus** – Harrell did not receive a year-end bonus in 2009 though other Caucasian Orkin employees, such as Dear, did receive such a bonus. Harrell argues that the decision to not award him a bonus was discriminatorily based on his race.[17]

7) **Erroneous write-ups** – In March and May 2010, Zimmerman placed verbal counseling forms in Harrell's personnel file regarding Harrell's service technicians' high percentage of allowances. Harrell contends that these "write-ups were fraudulently placed in his personnel file, without his knowledge, as a way to harass [him]."[18] Harrell discovered these forms in his file sometime in July 2010.[19]

---

Q: And that would be the worst type of situation?
A: Correct.

[15] R. Doc. Nos. 62-1, p. 8 and 66-1, p. 13.

[16] R. Doc. Nos. 62-1, p. 98 and 66-1, p. 14.

[17] R. Doc. Nos. 62-1, p. 12 and 66-1, p. 17.

[18] R. Doc. Nos. 62-1, pp. 12-14 and 66-1, p. 18.

8) **Exclusion from golf tournaments and lunch** – Harrell was the only manager who was never invited to play in Orkin's yearly golf tournament. He was also never invited to eat lunch with other managers.[20]

Harrell argues that such harassment "clearly affected the terms and conditions of his employment, as well as affected his ability to perform his job competently and to advance within the company" and that he has presented a *prima facie* case that he was subjected to a hostile work environment.[21] He further maintains that, given such harassment, he has presented a *prima facie* case that Orkin constructively discharged him because it " 'deliberately [made his] working conditions so intolerable that [he was] forced into an involuntary resignation.' "[22] Consequently, he contends that summary judgment is inappropriate at this time because "there exist many disputed genuine issues of material fact in this incredibly fact intensive case."[23]

---

[19] R. Doc. No. 1-2, p. 3.

[20] R. Doc. Nos. 66-2, pp. 13-15 and 66-3, p. 123.

[21] R. Doc. No. 66, p. 9.

[22] R. Doc. No. 66, p. 12 (quoting *Jurgens v. EEOC*, 902 F.2d 386, 390 (5th Cir. 1990)). Orkin filed a breach of contract suit against Harrell after he left Orkin and started his own pest control company (*Orkin, L.L.C. v. Tyrone Harrell and Harrell Termite & Pest Control, L.L.C.*, Case No. 695-753, 24th Judicial District Court for the Parish of Jefferson, State of Louisiana). R. Doc. No. 62-8. At his deposition, Harrell testified that he believed that Orkin's lawsuit was also harassment that supported his claims. R. Doc. No. 66-2, p. 90.

   The Court notes that U.S. District Courts have found that post-employment conduct is not actionable harassment pursuant to Title VII of the Civil Rights Act of 1964. *See Lampkin v. U.S. Bancorp*, 2008 WL 723744, at *3 (E.D. Mo. March 17, 2008) (holding that post-employment text messages "do not establish an on-going violation by the defendant, because the defendant owed no legal duty to [plaintiff] once it no longer employed her"); *Backhanon v. Huff & Assoc. Constr. Co., Inc.*, 506 F.Supp.2d 958, 968 (M.D. Ala. 2007) (holding that post-employment conduct could not defeat summary judgment because "a hostile work environment claim requires that the employee *be subjected to* the environment") (emphasis in original); *see also* discussion, *infra*, regarding Title VII jurisprudence and the LEDL.

[23] R. Doc. No. 66, p. 16 (underlining omitted). Orkin argues that it believes that Harrell is only advancing claims for hostile work environment and constructive discharge, and not claims predicated on the underlying discrete, allegedly

*LAW AND ANALYSIS*

## I.      Summary Judgment Standard

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The showing of a genuine issue is not satisfied by creating " 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

discriminatory events.  Nevertheless, out of an abundance of caution, Orkin requests the Court to dismiss any claims Harrell may seek to advance based on these discrete events.  R. Doc. No. 62-2, p. 4 n.3.  The Court observes that Harrell has informed the Court that his only causes of action are for hostile work environment and constructive discharge.  R. Doc. No. 66, p. 3.  Furthermore, Harrell may no longer amend his pleadings without leave of this Court.  Consequently, Harrell cannot seek relief predicated on such discrete events because he has not pled any claims predicated on those discrete events.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).

II. **Louisiana's Employment Discrimination Law**

Harrell's claims are not predicated upon racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII," 42 U.S.C. § 2000e, *et seq.*). Rather, he seeks relief pursuant to Louisiana's Employment Discrimination Law ("LEDL," La. Rev. Stat. § 23:301, *et seq.*). The LEDL – which prohibits an employer from discriminating against an individual based on his race, color, religion, sex, age or national origin – is similar in scope to Title VII's prohibitions against discrimination. Federal courts look to Title VII jurisprudence to interpret the LEDL. *Baker v. Fedex Ground Package Sys.*, 278 Fed. App'x 322, 327 (5th Cir. May 13, 2008) ("We look to federal employment discrimination jurisprudence when interpreting Louisiana's anti-discrimination laws." (citing *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002)); *see also King v. Phelps Dunbar, L.L.P.*, 743 So.2d 181, 187 (La. 1999); *Bustamento v. Tucker*, 607 So.2d 532, 539 n.9 (La. 1991); *Alcorn v. City of Baton Rouge*, 898 So.2d 385, 388 (La. App. 1st Cir. 2008). Accordingly, this Court also relies on federal caselaw.

III. **Hostile Work Environment**

To survive summary judgment on a hostile work environment claim, Harrell must establish that: (1) he is a member of a protected class; (2) he was subjected to unwelcome

harassment; (3) that the harassment was based on race; (4) the harassment affected a term or condition of his employment; and (5) that his employer knew or should have known about the harassment and failed to take prompt remedial action. *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). "Where the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim," as Harrell alleges here, a plaintiff employee need only satisfy the first four elements. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353-54 (5th Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

　　To determine whether a hostile work environment exists, the Court must use a totality of the circumstances test that focuses on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (citing references omitted). "Although discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to support evidence of a Title VII violation, simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges that can survive summary judgment." *Id.* at 347-48 (internal quotation marks, citations and brackets omitted). In essence, a hostile work environment is one where "discriminatory conduct [is] so severe or pervasive that it create[s] a work environment abusive to employees because of their race." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. Thus, not only must the victim perceive the

environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007) (internal citations omitted).

The LEDL has a one-year prescriptive period. La. Rev. Stat. § 23:303(D); *Baker*, 278 Fed. App'x at 326. Harrell filed his lawsuit in the above-captioned matter on July 13, 2011.[24] Except for Harrell's discovery of the March and May 2010 counseling forms in "July 2010" and the golf tournament that Harrell was not invited to participate in during the "summer" of 2010,[25] all other allegedly discriminatory conduct occurred prior to July 13, 2010. Consequently, any claims predicated on pre-July 13, 2010 conduct are time-barred unless Harrell can show that such conduct falls within the continuing violation doctrine. *See Celestine*, 266 F.3d at 351-52 ("The continuing violation doctrine is designed to 'accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered timely.' " (quoting *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999)).

The continuing violation doctrine is not automatically applicable in every case where a plaintiff alleges a hostile work environment claim. *Celestine*, 266 F.3d at 353 (citing *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998); *Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir. 1983)). As another section of this court has observed, "there are limits to 'when a hostile work environment' claim can be invoked to trump an otherwise tolled statute of limitations." *Reiskind v. Jefferson Parish Sheriff Office*, 2008 WL 4891124, at *3 (E.D. La.

---

[24] R. Doc. No. 1-2.

[25] R. Doc. Nos. 1-2, p. 3 and 66-2, pp. 13-15.

Nov. 3, 2008) (Vance, J.).  First, the employee bears the burden of demonstrating that an "organized scheme led to and included the present violation."  *Celestine*, 266 F.3d at 353.

Furthermore,

> "[T]he continuing violation theory requires the same type of discriminatory acts to occur both inside and outside the limitations period," such that a valid connection exists between them. *Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000). Finally, "where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that she was a victim of actionable harassment, she can not reach back and base her suit on conduct that occurred outside the statute of limitations." *Hardin*, 167 F.3d at 344; *see also Webb v. Cardiothoracic Surgery Assocs.*, 139 F.3d 532, 537 (5th Cir. 1998) (explaining that, under the continuing violation doctrine, the plaintiff still must show a series of acts, one or more of which fall within the limitations period).

*Id.* at 352-53.

The U.S. Court of Appeals for the Fifth Circuit has identified three factors that a U.S. District Court may consider when determining whether a continuing violation exists: "(1) Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? (2) Are the alleged acts recurring or more in the nature of an isolated work assignment or incident? (3) Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights?"  *Id.* at 352 (citing *Huckabay*, 142 F.3d at 239).

For the purposes of deciding this motion the Court must construe every possible inference from the evidence presented in Harrell's favor.  Yet, even when this Court does so and assumes, given Dear's deposition testimony, that Orkin management discriminatorily prevented Harrell from advancing through the company due to his race, Harrell still cannot surmount the third factor. Orkin's allegedly discriminatory conduct should have triggered Harrell's awareness of and duty to assert his rights.

First, the complained of, allegedly discriminatory, conduct occurring prior to July 13, 2010, is comprised of: (1) a demotion, (2) repeated failures to promote, (3) erroneous "write ups," and (4) the denial of Harrell's year-end bonus. The U.S. Supreme Court has identified these types of discrimination as "discrete acts" and each act constitutes "a separate actionable 'unlawful employment practice.' " *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (U.S. 2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' ").[26]

Such discrete acts differ from the repeated harassment contemplated by a hostile work environment claim where "a single act of harassment may not be actionable on its own." *Id.* at 115. As the Fifth Circuit has emphasized, "discrete and salient event[s]" like demotions or failures to promote "should put an employee on notice that a cause of action has accrued." *Huckabay*, 142 F.3d at 240.

Second, the Court notes that Harrell's deposition testimony reveals that he *in fact believed* he was being discriminated against at least as early as August 2009 when Dear, rather than Harrell, was promoted to the vacant residential pest control branch manager position.[27] Consequently, Harrell was *actually on notice* that he was the alleged victim of employment

---

[26] The Fifth Circuit has held that a reprimand also constitutes a discrete act following *Morgan*. *See Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 Fed. App'x 346, 349 (5th Cir. May 4, 2010) ("The Supreme Court has defined 'discrete acts' as easily identifiable incidents, including termination, failure to promote, denial of transfer, and refusal to hire. . . . . Under this standard, the April 12, 2005 reprimand, the alleged June 2005 pay-raise exclusion, and the denials of weekend overtime qualify as such discrete acts.").

[27] *See* R. Doc. No. 66-2, pp. 24-51, 84-88 and 101.

discrimination based on race – such that he should have pursued legal action at that time – nearly two years before he initiated his lawsuit in the above-captioned matter. Harrell's knowledge bolsters this Court's conclusion that Orkin's alleged misconduct constitutes "discrete acts" and Harrell cannot rescue his hostile work environment claim by arguing that Orkin's misconduct falls within the continuing violation doctrine.

Harrell cannot overcome the one-year prescriptive period set forth in La. Rev. Stat. § 23:303(D). As the Fifth Circuit has observed, "where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that []he was a victim of actionable harassment, []he can not reach back and base [his] suit on conduct that occurred outside the statute of limitations." *Celestine*, 266 F.3d at 352-53. The Court must dismiss any claims based on discrete acts occurring prior to July 13, 2010, as time-barred. *Tillman*, 377 Fed. App'x at 349.

The remaining alleged discriminatory conduct which may form the basis of a hostile work environment claim includes: (1) Harrell's discovery of the allegedly erroneous March and May 2010 write-ups in July 2010 and (2) his exclusion from the summer 2010 golf tournament and lunches with other managers. As set forth above, for Harrell's hostile work environment claim to survive Orkin's motion, he must establish that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; and (4) the harassment affected a term or condition of his employment. *E.E.O.C.*, 496 F.3d at 399. Whether the write-ups and Harrell's exclusion from the golf tournament affected a term or condition of his employment is critical to plaintiff's satisfaction of the fourth factor.

As set forth in greater detail above, in order for harassment to affect a term or condition of Harrell's employment the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Morgan*, 536 U.S. at 116 (internal quotation marks and citing reference omitted); *see also Smith v. Harvey*, 265 Fed. App'x 197, 202 (5th Cir. Feb. 7, 2008); *Castrillo v. Snow*, 2004 WL 1920951, at \*5 (E.D. La. Aug. 27, 2004) (Zainey, J.).

Harrell has produced Dear's deposition testimony wherein Dear states that at various times he heard members of Orkin's management make racially discriminatory comments and that management did not want Harrell to advance within Orkin because of his race. Harrell argues that these comments support his contention that placing the March and May 2010 write-ups in his personnel file was discriminatory and that this created a hostile working atmosphere. The Court rejects this argument. The comments that Harrell highlights are indeed ignorant, offensive, and demonstrate a racial animus. For example, Dear testified that David Davis referred to African-American employees as "darkies" and that "Davis instructed [Dear] to 'throw them a watermelon' whenever 'they' get riled up."[28] Dear stated that he believed that this

---

[28] R. Doc. No. 66, p. 8. Dear also testified (R. Doc. No. 66-3, pp. 16-17, 50 and 93-94):

> Don Tavlin, the -- the reg -- assistant region manager for Louisiana -- when I was leaving New Orleans and going to Jackson to be the branch manager, there was an African American who was a service manager in Jackson, and on my way -- on my ride there, he told me to find a way to fire that fucking nigger. Talking about Leonard Hayes. . . . .

> And also he [David Davis] told me not to trust Tyrone Harrell because he's one of them. . . . And David told me not to trust Tyrone with everything because he was -- he was afraid that Tyrone was going to certain employees and . . . providing them with privileged information. . . .

> [David Davis also told me] that I'd just have to watch my back.

discriminatory attitude prevented Harrell from advancing within Orkin. Nevertheless, Dear came to New Orleans in January 2009 and left in December 2009. He had no personal knowledge of the employment decisions at issue.[29] "Unsubstantiated assertions are insufficient to create a genuine issue of material fact." *White v. Gov't Emps. Ins. Co.*, 457 Fed. App'x 374, 381 n.32 (5th Cir. Jan. 4, 2012) (citing *QT Trading, L.P. v. M/V Saga Morus*, 641 F.3d 105, 111 (5th Cir. 2011)).

Furthermore, Harrell himself testified that during his fifteen years with Orkin he never heard any racially discriminatory or derogatory remarks.[30] As Harrell was not even aware of these alleged slurs because he never heard them, whether such comments were directed to himself or to another Orkin employee, Dear's testimony that he heard Orkin management use offensive language, without more, is not sufficient to defeat summary judgment on Harrell's hostile work environment claim. *White*, 457 Fed. App'x at 381 n.31 ("Because there is no evidence that [plaintiff] was aware of the remarks made behind her back, those alleged comments could not have contributed to a hostile work environment.").

Dear's testimony does not provide any evidence of discrimination rising to the "level of severity or pervasiveness required to support a hostile work environment claim." *Id.* at 381. Consequently, the Court finds that Dear's testimony does not indicate "conduct so 'extreme' as to amount to a change in the terms and conditions of [his] employment." *Id.* at 382.

---

[29] R. Doc. No. 66-3, pp. 30-31, 55, 69, 87-88, 92-94, 99-102, 106 and 108-09.

[30] R. Doc. No. 66-2, pp. 12, 16, 40 and 109.

As to the contents of the March and May 2010 write-ups,[31] Orkin argues that the write-ups document conversations that Zimmerman had with Harrell regarding his service technicians' performance. The March 2010 write-up states: "The following conduct/performance has been observed: Failure to achieve company standard for PC on-time service of 80%. The expected level of performance/conduct is: Ensure route managers are performing to a minimum of 80% on-time service."[32] The May 2010 write-up states: "The following conduct/performance has been observed: May final P&L allowance percentage of 2.53 which 1% is company standards. The expected level of performance/conduct is: Achieve a significant reduction for pest control allowances to a minimum of 1.49% or below for June and 1% or under by the end of July 2010 by holding all technicians accountable to service their scheduled customers on time when the customer is scheduled."[33]

Harrell disputes Orkin's allegation that the 80% on-time operating standard was "required" and the contributing cause for the high number of "allowances"[34] in 2010.[35] Harrell contends that these "write-ups were fraudulently placed in his personnel file, without his knowledge, as a way to harass Harrell."[36] Nevertheless, Harrell testified that he had conversations with Zimmerman about the 80% on-time performance standard and his service

_____

[31] The forms are not dated. *See* R. Doc. No. 62-3, pp. 121 and 124. Nevertheless, both parties refer to these documents as the March 2010 and May 2010 write-ups.

[32] R. Doc. No. 62-3, p. 121.

[33] R. Doc. No. 62-3, p. 124.
[34] For the definition of "allowances," *see supra* n.14.

[35] R. Doc. No. 66-1, pp. 19 and 20.

[36] R. Doc. No. 66-1, p. 18.

technicians' number of allowances.[37]  For example, with respect to the May 2010 write-up,

Harrell testified:

> Q: And the standard that [Zimmerman's] expressing is ["]let's try to get to 1.49
> percent for June and one percent by the end of July?["]
>
> A: Correct.
>
> Q: And to hold all technicians accountable?
>
> A: Uh-huh.  Yes.
>
> Q: Had there been a verbal discussion, maybe not in the context of ["]I'm going to
> put a warning in your file or verbal warning,["] but ["]let's try to get to that 1.49
> percent?["]
>
> A: All the time.
>
> Q: All the time.  Get to that.  ["]We need to get to one [percent], but let's take
> baby steps?["]
>
> A: Yes, uh-huh.
>
> Q: And did you, in fact, hold your -- go to your technicians after having those
> types of discussions with Mr. Zimmerman?
>
> A: Correct.
>
> Q: And your complaint is well, ["]Mr. Zimmerman didn't tell me he was actually
> going to put this in the form of a verbal warning and stick it in my file?["]
>
> A: Yes.
>
> Q: But as to the underlying data of we were weren't meeting the allowances
> percentages, you don't dispute that?
>
> A: No.[38]

---

[37] R. Doc. No. 66-2, pp. 94-108.

[38] R. Doc. No. 66-2, pp.106-07.

In order for Harrell to satisfy the fourth factor regarding whether the alleged harassment he suffered was sufficiently severe or pervasive to alter the conditions his employment, Orkin's complained of conduct must be both objectively and subjectively offensive. *E.E.O.C.*, 496 F.3d at 399. Harrell has testified that he subjectively believed at that time and continues to believe that the write-ups constituted harassment based on his race. Nevertheless, these write-ups also must objectively constitute racially discriminatory harassment. While Harrell asserts that the act of placing such write-ups in his personnel file was discriminatory, he admits that the conversations about these very topics occurred. He also does not argue that the data regarding his service technicians' performances were incorrect. As such, Zimmerman's placement of the write-ups in Harrell's personnel file is not objectively discriminatory.

Finally, Harrell asserts that he was not invited to play in the summer 2010 golf tournament or to eat lunch with other managers. With respect to the golf tournament, Harrell testified that he did not know whether the tournaments were held every year, he did not know who organized the tournaments and he did not know who issued the invites to the players.[39] Only on one occasion did Harrell voice to Zimmerman his displeasure that he was not invited. According to Harrell, in response to the complaint, Zimmerman stated that he did not know that Harrell played golf.[40] Furthermore, Harrell has not presented any summary judgment evidence with respect to how his alleged exclusion from the golf tournament had any relation to his race. *Castrillo*, 2004 WL 1920951, at *6.

---

[39] R. Doc. No. 66-2, pp. 13-15.

[40] R. Doc. No. 66-2, p. 14.

Likewise, the only summary judgment evidence that is before the Court regarding the managers' lunch outings comes from the testimony of Dear who stated that "I just thought it was odd that we had -- would eat lunch almost every day, and Tyrone was never included or invited, but all the rest of the managers were."[41] Dear does not provide any further information, such as who organized the lunches or who selected the managers invited to lunch, that would allow the Court to conclude that Harrell's exclusion was in any way related to his race. *Id.* In his own deposition testimony, Harrell never discusses the fact that he was allegedly excluded from managers' lunches. In sum, while Harrell might have subjectively felt that his exclusion from golf and lunch outings was racially discriminatory, on an objective basis, considering the totality of the circumstances, the Court cannot conclude that this exclusion is objectively discriminatory.

Consequently, with respect to all remaining conduct that is not prescribed pursuant to La. Rev. Stat. § 23:303(D), the Court finds such conduct did not create a hostile work environment. Harrell has not presented a *prima facie* case that his employment with Orkin was so "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Morgan*, 536 U.S. at 116. Harrell's hostile work environment claim must be dismissed.[42]

## IV. Constructive Discharge Claim

"Constructive discharge occurs when an employee has quit [his] job under circumstances that are treated as an involuntary termination of employment." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004) (citing *Young v. Southwestern Sav. & Loan Ass'n*, 509

---

[41] R. Doc. No. 66-3, p. 123.

[42] Because the Court finds that Harrell cannot establish a *prima facie* case for his hostile work environment claim, the Court need not determine whether Orkin is entitled to the *Faragher/Ellerth* affirmative defense on that claim.

F.2d 140, 144 (5th Cir. 1975)).  To establish a constructive discharge claim, an employee "must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001); *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (quoting *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)).  A plaintiff must further meet an objective, "reasonable employee" test and demonstrate that a reasonable person in his shoes would have felt compelled to resign under the circumstances.  *See Penn. State Police v. Suders*, 542 U.S. 129, 141, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004); *Tillman*, 377 Fed. App'x at 350; *Barrow*, 10 F.3d at 297 n.19.  The Court must look to the individual facts of each case without regard to the employee's subjective state of mind.  *Easterling v. Sch. Bd. of Concordia Parish*, 196 Fed. App'x 251, 253 (5th Cir. July 28, 2006); *Barrow*, 10 F.3d at 297.

A constructive discharge claim requires a greater degree of harassment than that required by a hostile environment claim. *Brown*, 237 F.3d at 566.  "Mere harassment, alone, is insufficient; rather, the plaintiff must show 'aggravating factors' to justify departure." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004).  To determine whether a reasonable employee would have felt compelled to resign, the Court considers the following factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not.  *Browning v. Southwest Research Inst.*, 288 Fed. App'x 170, 180 (5th Cir. Aug. 5, 2008); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771-72 (5th Cir. 2001).  As the Fifth Circuit has stated, "discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge." *Brown*, 237 F.3d at 566.

First, the Court notes that Harrell was not able to establish a *prima facie* case of a hostile work environment. Second, the Court agrees with Orkin that Harrell's allegations are as unavailing as those that the plaintiff employee asserted in *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985 (5th Cir. 2008), a case wherein the Fifth Circuit affirmed the district court's grant of summary judgment in favor of the defendant employer.

In *Stover*, the plaintiff claimed that: (1) she was not paid appropriately; (2) she was not provided the same opportunities for career development as her co-workers; (3) her complaints of race discrimination were not investigated; (4) she was not allowed to accrue compensatory time while her co-workers were given such allowance; (5) her supervisor "exhibited anger, violence, shouting, and waved his arms at [her];" and (6) she was "excluded from prestigious retreats" and meetings. *Stover*, 549 F.3d at 991-92. Given these facts, the Fifth Circuit held that "[t]he evidence that [plaintiff cited] in support of her constructive discharge claim [did] not amount to conditions or an environment so intolerable that a reasonable employee would feel compelled to resign." *Id*. at 992.[43] The Court finds that Harrell has failed to allege facts sufficient to conclude that the working conditions at Orkin were so intolerable that a reasonable employee would feel compelled to resign.

Finally, "[a]n employee who resigns without affording the employer a reasonable opportunity to address [his] concerns has not been constructively discharged." *Williams v. Barnhill's Buffet Inc.*, 290 Fed. App'x 759, 762 (5th Cir. Aug. 26, 2008); *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 301 (5th Cir. 2001). During the entire period in which Harrell believed he was being discriminated against based on his race, he only complained once, in March 2008.[44] Nevertheless,

---

[43] *See also Green v. Sutherland*, 2000 WL 222853, at *2 (E.D. La. Feb. 17, 2000) (Duval, J.) (finding "no support in the case law for the proposition that a simple discriminatory denial of promotion that cannot be reasonably construed as a career-ending action can alone create such embarrassment or humiliation that the denial comprises a constructive discharge").

[44] R. Doc. No. 66-2, pp. 29-31, 36, 38, and 46-47.

Harrell repeatedly testified, including with respect to his March 2008 complaint, that he never informed Orkin that he believed he was the victim of racial discrimination.[45] Harrell never filed a complaint with the Equal Employment Opportunity Commission.[46] No person at Orkin ever threatened him or discouraged him from reporting such misconduct.[47]

Harrell's argument that he subjectively believed that reporting or complaining of his harassment was futile is of no moment. First, Harrell presents no evidence that reporting or complaining his harassment would be futile. Second, Harrell received a copy of the Orkin Employee Handbook.[48] Orkin's handbook includes a clear policy which provides that "any form of harassment related to race, color, age, sex, pregnancy, religion, national origin, veteran status or disability (or any legally protected criteria) violates company policy."[49] The policy states that any employee "who violates this policy shall be subject to disciplinary action up to an including termination."[50] Furthermore, the policy informs employees that:

> Any employee or applicant who believes he or she is being treated in violation of this policy should discuss the matter immediately with his or her branch manager, region manager, the Human Resource Service Center at [telephone numbers], the Business Report Line at [telephone number], or the Business Abuse Report website at [website address], *without fear of reprisal*. . . .

---

[45] R. Doc. No. 66-2, pp. 38-39, 45, 47, 50 and 59-60.

[46] R. Doc. No. 66-2, p. 117.

[47] R. Doc. No. 66-2, pp. 62-63.

[48] R. Doc. No. 66-2, pp. 52-62. Harrell also signed an acknowledge and agreement which states, "I specifically acknowledge that I have read and understood the section regarding Equal Employment Opportunity, Diversity and Respect Policy and the Standards of Conduct." R. Doc. No. 62-3.

[49] R. Doc. No. 62-4, p. 8. The policy provides examples of what is considered harassment, including "[s]lurs, jokes and other verbal, graphic or physical conduct relating to an individual's race, color, sex, age, religion, national origin or disability." *Id.*

[50] R. Doc. No. 62-4, p. 8.

> Any branch manager or region manager receiving a complaint of discrimination shall ensure that the matter is properly investigate by consulting the Human Resources Department and/or the Law Department for Assistance.[51]

The Court concludes that a reasonable employee in Harrell's position would have pursued internal remedies or filed an E.E.O.C. complaint before resigning. *Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990) (holding that, in most cases, a reasonable employee would pursue internal remedies or file an EEOC complaint before resigning). Consequently, the Court finds that Harrell was not constructively discharged and this claim must be dismissed.

*CONCLUSION*

Accordingly, given the foregoing reasons,

**IT IS ORDERED** that Orkin's motion for summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Harrell's complaint in the above-captioned matter is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, June 22, 2012.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[51] R. Doc. No. 62-4, p. 8 (emphasis added).